# Exhibit I

**From:** Richard Pachulski <rpachulski@pszjlaw.com>
**Sent:** Monday, August 3, 2020 4:41 PM
**To:** Maxim Litvak; Jeff Pomerantz; David Barton; Warner, Michael
**Subject:** Fw: Neiman Marcus / MYT Backstop LOI
**Attachments:** My Theresa Backstop - Letter of Intent 8-2-20_ WP.pdf; My Theresa Backstop - Executed Letter of Intent 8-2-20.docx

Sent from my BlackBerry - the most secure mobile device
From: rdaversa@orrick.com
Sent: August 2, 2020 3:57 PM
To: rpachulski@pszjlaw.com; mmeghji@miiipartners.com
Cc: jfemenia@jefferies.com; dhakim@jefferies.com; Eric.Geller@Jefferies.com; msharp@jefferies.com; bmcloughlin@jefferies.com; shan@jefferies.com; agoodwin@jefferies.com; mahmed@jefferies.com; justin.yi@orrick.com; acitron@orrick.com
Subject: Neiman Marcus / MYT Backstop LOI

Rich and Mo
I hope you are both enjoying your weekend. Attached please find both Word and PDF versions of Jefferies' executed Letter of Intent with respect to the referenced transaction.
We look forward to hearing from you at your earliest convenience.

Raniero D'Aversa, Jr.<http://www.orrick.com/Lawyers/Raniero-D-Aversa/Pages>

Chair, Restructuring Group

Orrick<https://www.orrick.com>
New York<https://www.google.com/maps/place/Orrick, Herrington & Sutcliffe/@40.761135,-73.978771,19z/data=!4m7!1m4!3m3!1s0x89c258f916b8c7d1:0xfef547182d6d33ff!2sOrrick, Herrington & Sutcliffe!3b1!3m1!1s0x89c258f916b8c7d1:0xfef547182d6d33ff?hl=en>

[V-card]<https://www.orrick.com/api/sitecore/PersonnelPage/vCard?personnelGuid=7409228D-83A5-4A41-8C9D-A6651AD4B494>

T +1-212-506-3715
rdaversa@orrick.com<mailto:rdaversa@orrick.com>
<http://www.orrick.com>[Orrick]<http://www.orrick.com/><http://www.orrick.com/>

Distressed Download Blog<http://blogs.orrick.com/distressed-download>

NM_UST_CS_00003

**U.S. Trustee's Exhibit 2 - CS**

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit http://www.orrick.com<http://www.orrick.com/>.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy<https://www.orrick.com/Privacy-Policy> to learn about how we use this information.

_____

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

NM_UST_CS_00004

**U.S. Trustee's Exhibit 2 - CS**

# Jefferies

Jefferies Structured Credit LLC
520 Madison Avenue
New York, NY 10022
*tel*   212.284.2300
Jefferies.com

August 2, 2020

***Via Electronic Mail***

Neiman Marcus Group LTD LLC
One Marcus Square
1618 Main Street
Dallas, TX 75201

Official Committee of Unsecured Creditors
c/o Richard Pachulski
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA  90067-4003

Re:  *Backstop of Proposed Cash-Out Option under the First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code of Neiman Marcus Group LTD LLC and its Debtor Affiliates [Docket No. 1388 in the Chapter 11 Cases] (the "Plan")*

Ladies and Gentlemen:

Reference is hereby made to the chapter 11 bankruptcy cases, lead case no. 20-32519 (DRJ) (the "Chapter 11 Cases"), currently pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), in which Neiman Marcus Group LTD LLC (the "Company" and, together with its affiliated debtors, the "Debtors") are debtors in possession.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

In order to facilitate the Debtors' emergence from chapter 11, pursuant to this letter of intent (including Annex 1 hereto, this "Letter of Intent"), and subject to the terms, conditions and limitations set forth herein and in Annex 1 and in consideration for the Backstop Premium (as defined in Annex 1), Jefferies Structured Credit LLC or one or more of its affiliated entities ("Jefferies") is willing to purchase, on the Effective Date, up to 140,000,000 shares of MYT Series B Preferred Stock issued by MYT Holding Co. (the "Shares") at the Backstop Price (as defined in Annex 1), which such purchase will be used to fund a proposed cash-out option for holders of non-deficiency General Unsecured Claims who elect to receive cash in lieu of receiving Shares for their General Unsecured Claims in accordance with the treatment set forth in the Plan for Classes 10 and 11 (collectively, the "Transaction").

We look forward to working with you to a mutually beneficial Transaction.  Please do not hesitate to contact me at jfemenia@jefferies.com or (212)708-2834.

If the foregoing terms are acceptable, please indicate the concurrence with the terms and conditions set forth herein by signing in the space provided below and returning a copy to the undersigned at your earliest convenience.  This Letter of Intent may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same document.  This Letter of Intent

# Jefferies

shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflicts of laws rules or principles.

Sincerely yours,

Jefferies Structured Credit LLC

By: _____

Name: Joseph Femenia

Title: Managing Director

# Jefferies

ACCEPTED AND AGREED:

Neiman Marcus Group LTD LLC

By: _____
Name:
Title:

Date:

ACCEPTED AND AGREED:

[Official Committee of Unsecured Creditors]

By: _____
Name:
Title:

Date:

NM_UST_CS_00007

**ANNEX 1**

**SUMMARY OF TERMS**

      The following summary of terms outlines certain indicative terms of the Transaction.  These materials are neither an express nor implied commitment by Jefferies or any affiliate thereof to act in any capacity described herein, or to enter into the transaction described herein, which commitment, if any, shall only be as set forth in a separate definitive agreement. Any such commitment will be subject to, among other conditions set forth below, (i) satisfactory transaction structure and documentation, (ii) satisfaction with due diligence and (iii) other standard and customary conditions for transactions of this type.  The participation of Jefferies in this transaction also remains subject to further internal review and approvals and satisfactory market conditions.  This summary of terms does not purport to summarize or set forth all the terms, conditions, representations, warranties and other provisions with respect to the Transaction, and is only presented as an indicative summary of certain terms of the Transaction.

| | |
|---|---|
| *Shares:* | Subject to the terms, conditions and limitations set forth herein, Jefferies will commit to purchase up to 140,000,000 Shares of MYT Series B Preferred Stock issued by MYT Holding Co. (the "Series B Preferred Stock") on or during the nine month period after the Effective Date (the "Purchase Term") at the Backstop Purchase Price (as defined below) (the "Purchase"); provided, that Jefferies shall be permitted to assign or syndicate any portion of such commitment in its sole discretion.  The total number of Shares to be purchased by Jefferies may be reduced in accordance with the terms of "*Permitted Auction Period*" below.  The Series B Preferred Stock shall not be subject to any restrictions on transfer, and shall be freely tradeable subject only to restrictions arising under applicable securities laws. |
| *Backstop Purchase Price:* | The Shares subject to the Purchase shall be purchased at a price of $0.3025 per Share (such price, as may be adjusted downwards in accordance with the immediately following sentence, the "Backstop Purchase Price"). Notwithstanding the foregoing, to the extent the 10 day average closing price prior to the Effective Date of the Reference Companies (as defined below) is less than the 10 day average closing price prior to the date the Backstop Order is entered, the Backstop Purchase Price shall be automatically adjusted downward in a percentage-change factor of 2X the percentage of the price decrease for the Reference Companies.  The Reference Companies shall include: ASOS PLC (ASC LN), Revolve Group Inc. (RVLV), Zalando SE (ZAL GY), Boohoo Group PL (BOO LN) and Farfetch Ltd. (FTCH). |
| | For avoidance of doubt, the maximum aggregate purchase price payable by Jefferies in connection with the Transaction shall not exceed $42,000,000. |
| | The proceeds of the purchase of Shares by Jefferies shall be used solely to fund a proposed cash-out option for holders of non-deficiency General Unsecured Claims who elect to receive cash in lieu of receiving Shares for their General Unsecured Claims in accordance with the treatment set forth in the Plan for Classes 10 and 11. |
| | Holders of Class 10 and 11 claims will be assumed to elect the cash-out option unless they affirmatively choose to receive their pro-rata portion of the Shares. |

NM_UST_CS_00008

**ANNEX 1**

| | |
|---|---|
| ***Permitted Auction Period:*** | For a period of 45 consecutive calendar days from the date a final order of the Bankruptcy Court approving the Transaction (including the Expense Reimbursement (as defined below) and Backstop Premium) has been entered and become non-appealable (the "<u>Backstop Order</u>" and, such 45-day period, the "<u>Permitted Auction Period</u>"), the Debtors and the Creditors Committee will be permitted to solicit alternative proposals with respect to the purchase of all or a portion of the Shares (subject to the Minimum Purchase Option (as defined below); provided, that the Debtors and the Creditors Committee shall not be permitted to accept any alternative proposal (and the Backstop Order shall provide that no alternative proposal shall be authorized) unless such proposal includes a purchase price of at least $0.33 per Share (the "<u>Minimum Topping Bid</u>"). |

From and after the date hereof, the Debtors shall promptly (and in any event within one business day of receipt) inform Jefferies of any and all bids, indications of interest or other proposals (whether written or oral) to acquire all or any portion of the Shares ("<u>Alternative Proposal</u>"), including the price offered and all other material terms thereof.  Jefferies shall have the option (which it may exercise in its sole discretion) to match the price reflected in any Alternative Proposal that is superior to the terms hereof, which it may exercise, at Jefferies' option, either (x) during the five business day period immediately following the expiration of the Permitted Auction Period or (y) during the five business day period after the Debtors' inform Jefferies that the Debtors intend to accept such Alternative Proposal (the "<u>Match Right</u>"). If Jefferies exercises its Match Right in respect of any Alternative Proposal, the purchase price to be paid by Jefferies with respect to the Shares offered to be purchased in such Alternative Proposal will equal the price so matched, and the Debtors and the Creditors Committee shall not be permitted to accept such Alternative Proposal.

| | |
|---|---|
| ***Minimum Purchase Option:*** | Notwithstanding anything to the contrary herein, Jefferies will have the option (which it may exercise in its sole discretion at any time prior to the fifth business day after the Effective Date) to purchase up to the greater of (x) 10% of the total number of Shares that are cashed out and (y) 2,000,000 Shares, in each case at the Backstop Purchase Price (the "<u>Minimum Purchase Option</u>"). |
| ***Term of Jefferies' Obligation to Purchase Shares:*** | During the Purchase Term, Jefferies will Purchase any incremental Shares at the Backstop Purchase Price at the time of any anticipated distributions under the Plan.  If, at the end of the Purchase Term, there remain any undistributed Shares (whether on accounted of disputed claims or otherwise), Jefferies shall have the option (which it may exercise in its sole discretion) to purchase any Shares elected for cash but not distributed, at the Backstop Purchase Price. For the avoidance of doubt, Jefferies shall not have any obligation to purchase any Shares after the expiration of the Purchase Term unless it exercises the option described in the immediately preceding sentence. |
| ***Fees and Expenses:*** | <u>Backstop Premium</u> |

If any Alternative Proposal is accepted by the Debtors or the Creditors Committee or Jefferies exercises its Match Right in respect of any Alternative

NM_UST_CS_00009

Proposal (each, an "<u>Accepted Topping Bid</u>"), Jefferies shall be entitled to a fee equal to product of (i) the sum of (a) the difference between the Minimum Topping Bid and the Backstop Purchase Price and (b) 10% of the difference between the price in such Accepted Topping Bid (the "<u>Alternative Purchase Price</u>") and the Minimum Topping Bid, <u>multiplied by</u> (ii) the actual number of shares sold pursuant to such Accepted Topping Bid (the "<u>Backstop Premium</u>").  For the avoidance of doubt, the Backstop Premium will reduce available cash for distribution to the holders of Class 10 and Class 11 claims who elect the cash-out option under the Plan, but will not impact distributions to holders who elect to receive their pro rata portion of Shares.  The Backstop Premium will be paid to Jefferies on the Effective Date in the form of shares of Series B Preferred Stock that are valued at the lower of (x) the Alternative Purchase Price and (y) $0.40 per Share.

Once earned, the Backstop Premium shall be: (i) allowed as an administrative claim pursuant to Sections 503(b) and 507(a)(1) of the Bankruptcy Code; (ii) secured by a lien in the Debtors' assets junior only to the liens securing the Debtors' debtor in possession financing and liens securing non-avoidable pre-petition liens and (iii) payable to Jefferies without necessity of an order of the Bankruptcy Court other than the Backstop Order.

<u>Expense Reimbursement</u>

The Debtors shall, and the Backstop Order shall provide for the Debtors to, reimburse upon request all of Jefferies' reasonable out-of-pocket costs and expenses, including reasonable attorneys' fees, incurred by Jefferies at any time in connection with the Transaction (the "<u>Expense Reimbursement</u>").  The Expense Reimbursement (or any portion thereof) shall be: (a) allowed as an administrative claim pursuant to Sections 503(b) and 507(a)(1) of the Bankruptcy Code; (b) secured by a lien in the Debtors' assets junior only to the liens securing the Debtors' debtor in possession financing and non-avoidable pre-petition liens and (c) payable to Jefferies promptly upon request without necessity of an order of the Bankruptcy Court other than the Backstop Order.

*Conditions:*       The Transaction, and Jefferies' obligations to consummate the transactions contemplated hereby (including the Purchase), is subject to the satisfaction of the following conditions: (a) the negotiation and execution of definitive documentation for the Transaction (the "<u>Definitive Documentation</u>") in form and substance satisfactory to Jefferies in its sole discretion; (b) the receipt of all necessary internal approvals at Jefferies; (c) required KYC onboarding approval and internal checks with respect to the Transaction (including any transferor of Shares); (d) there shall be not greater than (i) 250,000,000 shares of Series B Preferred Stock outstanding and (ii) 250,000,000 shares of Series A Preferred Stock of MYT Holding Co. outstanding; (e) the outstanding indebtedness of MyTheresa and its subsidiaries shall not exceed $250,000,000 in the aggregate; (f) there shall not have occurred a material adverse change in the business, financial condition or results of operations (a "<u>Material Adverse Change</u>") of MyTheresa or the Debtors; (g) MyTheresa shall have entered into a registration rights agreement with Jefferies for customary shelf and piggyback registration rights in form and substance

NM_UST_CS_00010

satisfactory to Jefferies in its sole discretion; (h) MyTheresa shall have entered into an investors rights agreement with Jefferies in form and substance satisfactory to Jefferies in its sole discretion; (i) the Effective Date shall have occurred; and (j) the Backstop Order shall have been entered and become final and non-appealable.

| | |
|---|---|
| ***Termination:*** | Jefferies shall have the right to terminate this Letter of Intent upon delivery of written notice to the Debtors if: (a) the Debtors or MyTheresa suffer a Material Adverse Change; (b) the Effective Date does not occur on or prior to November 30, 2020 (the "<u>Outside Date</u>"); (c) the Plan is amended, modified or otherwise changed without the prior written consent of Jefferies (not to be unreasonably withheld) and such amendment, modification or change changes the recovery available to holders of Class 10 or Class 11 claims or otherwise adversely affects Jefferies; (d) the Backstop Order is not entered on or prior to [***date that is 15 business days after this letter is signed***], 2020; (e) the Debtors fail to perform any of their obligations under this Letter of Intent, which failure to perform is incapable of being cured or, if capable of being cured by the Outside Date, the Debtors have not cured within 10 calendar days following receipt by the Debtors of written notice of such failure to perform from Jefferies stating Jefferies' intention to terminate this Letter of Intent; (f) there is in effect an order of a governmental authority of competent jurisdiction permanently restraining, enjoining or otherwise prohibiting the consummation of the Transaction or any transactions contemplated by the Plan; or (g) any law, statute, rule, regulation or ordinance is adopted that makes consummation of the Transaction or any transactions contemplated by the Plan illegal or otherwise prohibited.  In the event of any termination, the parties shall cease to have any obligations hereunder except that the Minimum Purchase Option and Jefferies' right to receive the Backstop Premium and Expense Reimbursement pursuant to the terms hereof shall survive. |
| ***Definitive Documentation:*** | The Definitive Documentation will contain representations, warranties and covenants usual and customary for transactions of this kind. |
| ***Exclusivity:*** | During (i) the period from the execution of this Letter of Intent until the commencement of the Permitted Auction Period and (ii) the period from and after the expiration of the Permitted Auction Period, the Debtors and the Creditors Committee will not, directly or indirectly, or through any representative or otherwise, take any action to solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept or consider any proposal or offer of any other person relating to the issuance, sale or transfer of any equity interests of MyTheresa or any other transaction that would reasonably be likely to delay or impede the Transaction, in whole or in part, and both the Debtors and the Creditors Committee will immediately notify Jefferies regarding any contact from any other person regarding any such offer or proposal or any related inquiry. |
| ***Disclosure:*** | None of the Debtors, its beneficial owners, or the Creditors Committee will, without the prior consent of Jefferies, make any public comment or communication with respect to the Transaction or the contents of this Letter of Intent, except such parties may make any disclosures that may be required |

by applicable law or in connection with the Chapter 11 Cases, provided that such parties will consult with Jefferies in good faith prior to making any such disclosures.

***Governing Law:***       New York law shall govern the Definitive Documentation.


* * * * *

NM_UST_CS_00012